**CALDERON BARTON, PLLC**
**Joshua D. Barton, (032614)**
**Ernest J. Calderon, II, (031824)**
**3850 E. Baseline Road, Suite 109**
**Mesa, AZ 85206**
**Telephone: (602) 715-2484**
**Facsimile: (833) 841-1425**
**minuteentry@calderonbarton.com**
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Berumen,<br><br>                    Plaintiff,<br><br>        vs.<br><br>William Risen in his official capacity as Sheriff of La Paz County; La Paz County, a political subdivision; Eli Max,<br><br>                    Defendants. | CV:<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, for his complaint against defendants alleges as follows:

### Introduction

1. Defendant Deputy Eli Max, without evidence demonstrating that plaintiff had been driving or was in actual physical control of a vehicle, convinced the plaintiff to submit to a field sobriety test and then promptly arrested plaintiff without probable cause. Pursuant to the unlawful arrest Deputy Max completed and filed a Form 40-5807 with the Arizona Motor Vehicle Division, towed plaintiff's car, took plaintiff to jail, and charged him with DUI. Charges were subsequently dismissed. Defendant's unconstitutional conduct in this case was

1

not an isolated incident, it was part of a larger pattern and practice of unconstitutional conduct introduced by Sherriff Risen at the La Paz County Sheriff's Office.

Since taking office Sheriff Risen has encouraged and directed his deputies to cross constitutional boundaries by illegally performing or extending "traffic stops" to conduct unwarranted investigations in hopes of generating charges against the motoring and even non-motoring public. Apparently, this was part of a misguided effort to raise revenue for La Paz County and the Sheriff's Office. It resulted in unlawful harassment, false arrests, and unfounded criminal charges for a significant number of average citizens. Plaintiff Michael Berumen was one of the unfortunate citizens caught up in Sheriff Risen's mischief.

### Parties, Venue & Jurisdiction

2. Plaintiff Michael Berumen ("Berumen") is a resident of Tonopah, Arizona and was 40 years old when the incident giving rise to the complaint occurred.

3. Defendant William Risen is the Sheriff of La Paz County and is sued in his official capacity.

4. Defendant La Paz County is a political subdivision.

5. Defendant Eli Max ("Max"), upon information and belief, is or was a resident of La Paz County and employed as a deputy by La Paz County Sheriff's Office when the incident giving rise to the complaint occurred.

6. Max is sued in his individual capacity and is a "person" within the meaning of 42 U.S.C. 1983.

7. Defendants caused events to occur within Arizona out of which this matter arises.

8. This Court has jurisdiction of plaintiff's federal law claims pursuant to 28 USC § 1331.

### Factual Allegations

9. On September 29, 2019, plaintiff sought assistance from the Parker Police Department, at 1314 W. 11th Street, in Parker, Arizona because, at the time, he believed he was being pursued by individuals who intended to do him harm.

10. Prior to entering the police department building, plaintiff spoke with an unidentified uniformed officer outside and informed this officer of his concerns. This officer told him to call 911 and report the incident. He did.

11. At or near the time he was making the call, plaintiff spotted a marked law enforcement vehicle driving by. plaintiff flagged the vehicle down at approximately 4:04pm.

12. The vehicle stopped, Deputy Max exited the vehicle and approached the Plaintff in the parking lot. At the time Deputy Max arrived, plaintiff was standing outside of his rented vehicle, all of the vehicle doors were closed, and plaintiff was not in possession of the vehicle's keys.

13. Upon being approached by Deputy Max, plaintiff informed him that he was concerned for his safety and believed that he was being followed by his former girlfriend and/or her associates.

14. Plaintiff stated that he believed that a tracking device may have been placed on his rented vehicle.

15. Under the guise of helping plaintiff locate a "tracker," about which La Paz County Sheriff's deputies have no departmental training, Deputy Max proceeded to conduct a complete

search of the interior and trunk areas of the rental vehicle. He searched all of the plaintiff's personal belongings located in the rental vehicle as well, including closed personal bags and clothing.

16. After failing to find any tracker or any contraband Deputy Max asked plaintiff if he had smoked marijuana or taken any other drugs recently. Plaintiff responded that he had smoked marijuana two days prior.

17. Deputy Max then asked the plaintiff if he could perform tests on him to determine if he was safe to drive, because plaintiff had stated he had smoked marijuana two days prior.

18. Plaintiff remained cooperative and completed all tests administered. Footage from Deputy Max's body camera showed the plaintiff progressed through the field sobriety tests without difficulty. Upon completion of the exam Deputy Max placed plaintiff under arrest, handcuffed him and put him in the back of his vehicle.

19. Deputy Max then continued his search of the vehicle seizing and bagging a pair of scissors as evidence.

20. At the time of this unlawful arrest, plaintiff was employed as a commercial driver and was in the process of obtaining permits to own and operate his own commercial trucking company.

21. Pursuant to the unlawful arrest, Deputy Max filed an AZDOT Admin Per Se Implied Consent Form 40-5807 attesting that he had reasonable grounds to believe that plaintiff was in actual physical control of a vehicle while under the influence. Deputy Max made unsubstantiated and false claims on this form related to plaintiff's physical condition and the

results of the field sobriety test. As a result, plaintiff's commercial driver's license was suspeneded pursuant to A.R.S. 28-1385 causing the plaintiff substantial economic damages.

22. At no time during Deputy Max's interactions with plaintiff prior to his arrest did he observe or collect any evidence indicating plaintiff had recently been in control of the rental vehicle. At no time during Deputy Max's interactions with plaintiff did he demonstrate signs or symptoms of impairment. At no time during Deputy Max's interactions with the plaintiff prior to his arrest did plaintiff possess any drug paraphernalia. At no time prior to plaintiff's arrest did Deputy Max establish probable cause to affect plaintiff's arrest.

23. The La Paz County Attorney dismissed all charges against plaintiff Berumen.

24. Despite dismissal of the charges resulting from the his unlawful arrest, the plaintiff suffered significant economic damages as a result of the unconstitutional conduct of Deputy Max.

25. Deputy Max has a clear, established pattern and history of unconstitutional conduct most of which is documented in video from the body camera that he wore.

Case One

26. In one instance Max stopped a vehicle allegedly because he saw a common, pine tree shaped air freshener hanging from the rearview mirror.

27. After confirming the driver's license, registration, and insurance, Max removed the driver from the vehicle, requested to search and then refused to allow the driver to leave. Instead Max harassed the driver, accusing him of lying and of having cocaine, heroin and marijuana in the car. Deputy Max subjected the driver to nearly 20 minutes of unconstitutional harassment, before releasing the driver with a "warning."

5

28. La Paz County settled the driver's claim against Deputy Max before a lawsuit could be filed.

Case Two

29. In another case, Deputy Max and another deputy stopped a pickup truck for failing to come to a complete stop at a stop sign. The occupants of the truck were a middle-aged couple from California.

30. After confirming the driver's license, registration and insurance, Deputy Max did not cite or release the couple as the law requires.

31. Instead Deputy Max began his unconstitutional conduct.

32. Deputy Max searched the vehicle, subjected the driver to field sobriety tests, accused the driver of lying and having drugs hidden in the truck.

33. Deputy Max called for the police drug detecting K-9 to run through the truck.

34. Deputy Max teased the driver that he would bet money that the K-9 would find drugs.

35. The K-9 searched the truck and found nothing.

36. After about an hour Deputy Max let the driver go with a "warning."

Case Three

37. In yet another case, Deputy Max stopped a Jaguar sedan.

38. After confirming the driver's license, registration and insurance, Deputy Max did not cite or release the driver as the law requires.

39. Instead, Deputy Max began his unconstitutional conduct.

40. Deputy Max asked to search the vehicle. The driver consented but indicated that the trunk lock was broken and wouldn't open.

41. Deputy Max searched the vehicle and found nothing.

42. Deputy Max then produced a crowbar and told the driver that either the driver could pry his trunk open or Deputy Max would do it himself.

43. The driver took the crowbar and pried open the trunk, breaking the lock in the process.

44. The trunk was empty.

45. The driver was released with a "warning."

46. These three cases were not isolated incidents. Defendant Max, as he boasted on his body cam video, engages in this sort of conduct in every traffic stop.

47. Upon information and belief, Defendant Max violates the constitutional rights of virtually every motorist and or potential motorist he stops and or comes in contact with, and as a Field Training Officer has been training other La Paz County Sheriff's Office deputies to do the same.

## COUNT I

### 42 USC § 1983 Claims

### Against Defendant Max

48. Plaintiff realleges paragraphs 1 through 47 as is fully set forth herein.

49. At all material times Defendant Max acted under color of state law.

50. Defendant Max is a "person" within the meaning of 42 USC § 1983.

51. Defendant acted individually and/or in concert and/or set events in motion to deprive plaintiff of his rights, privileges or immunities secured by the US Constitution, including but not limited to the Fourth and Fourteenth Amendments.

52. Defendant violated plaintiff's civil rights when he detained the plaintiff and conducted an investigation without reasonable suspicion.

53. Defendant violated plaintiff's civil rights when he arrested plaintiff without probable cause or other justification. Deputy Max had collected no evidence indicating plaintiff had been in recent control of the vehicle he was arrested for driving under the influence. Plaintiff did not demonstrate signs or symptoms of impairment sufficient to establish probable cause for arrest. Nor did plaintiff possess any drug paraphernalia to establish probable cause for arrest.

54. Defendant violated plaintiff's civil rights after plaintiff's unjustified arrest. Defendants seized and falsely imprisoned plaintiff, initially holding plaintiff, handcuffed, in the back of a police car and then driving plaintiff to the La Paz County Jail where the plaintiff was held until his release.

55. Plaintiff has suffered significant damages as a result of the defendants' conduct.

56. Defendants are not entitled to qualified immunity. At the time of the incident the law was clearly established that: (1) Police officers could only briefly detain individuals based upon reasonable suspicion (2) police officers could not extend detainment to investigate unless they have reasonable suspicion, and (3) police officers could only make arrests supported by probable cause.

57. No reasonable police officer would have engaged in the clearly unconstitutional conduct exhibited by Deputy Max.

## **COUNT TWO**

***MONELL* CLAIM AGAINST SHERIFF RISEN AND LA PAZ COUNTY**

58. Plaintiff realleges the allegations of paragraphs 1 through 57 as if fully set forth herein.

59. Defendant Sheriff William Risen is, by virtue of A.R.S. § 11-441(A)(2), the final policy maker with regard to matters in the La Paz County Sheriff's Office, including training of deputy sheriffs. Defendant La Paz County is ultimately responsible for the La Paz County Sheriff's Office.

60. For the purposes of this claim, Sheriff William Risen is sued in his official capacity.

61. Upon information and belief, Sheriff Risen has failed to properly train deputies in 4th Amendment search and seizure matters, including but not limited to the restriction on police investigation as set forth by the US Supreme Court in *Rodriguez v. United States*, and matters related to probable cause to arrest.

62. As a result of the failure to train, plaintiff's constitutional rights were violated.

63. Defendant Risen and/or La Paz County had actual and/or constructive notice of deficient training because every officer carries a body camera. A review of the deputies' body camera videos would have revealed deputies violating the constitutional rights of citizens with whom they were in contact while on duty.

64. Upon information and belief, Defendant Risen and/or La Paz County compounded the failure to train by making Defendant Eli Max a Field Training Officer and allowing him to train other deputies to engage in obviously unconstitutional conduct.

9

65. Upon information and belief, La Paz County and/or Sheriff Risen disregarded a known or obvious consequence of their actions in that it was obvious that failing to train sheriff's deputies in 4th Amendment search and seizure matters, and continuing to employ Deputy Max and deputies like Deputy Max, who routinely violated the Constitutional rights of citizens would cause harm to the public, including plaintiff.

66. Upon information and belief, the failure to train sheriff's deputies amounts to a deliberate indifference to the rights of plaintiff and to the public by La Paz County and/or Sheriff Risen.

67. As a result of the conduct of La Paz County and/or Sheriff Risen, plaintiff has been damaged.

**WHEREFORE**, Plaintiff prays for this Court to enter judgement for the plaintiff against each defendant and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages and all claims allowed by law against individual defendants and in the amount to be determined at trial.

E. attorney's fees and the costs associated with this action under 42 U.S.C. §1988, including expert witness fees, on all claims allowed by law; and,

F. any further relief that this court deems just and proper, and any other appropriate

relief at law and equity.

## JURY DEMAND

1.Plaintiff demands a jury trial on all issues.

Dated: September 29, 2020.

**CALDERON BARTON, PLLC**

By:  */s/ Ernest J. Calderon, II*
        Ernest J. Calderon, II, Esq.
        Joshua D. Barton, Esq.
        *Attorneys for Plaintiff*

Copy to be mailed within 30 days to:

Mark Brnovich, Attorney General
Office of the Attorney General
Arizona Department of Law
2005 N. Central Avenue
Phoenix, AZ 85004

By: */s/Jessica Madden*